Andrew J. Shamis
ashamis@shamisgentile.com
**SHAMIS & GENTILE P.A**.
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Phone: (305) 479-2299

*Attorneys for Plaintiffs and the*
*Proposed Class*

*[Additional counsel on signature page]*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

**RAUL SANTOS, et al.**, individually and
on behalf of all others similarly situated,

        Plaintiffs,

    v.

**BACKCHECKED, LLC** ,

        Defendant.

Case No. CV-24-03690-PHX-JJT

**PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................ 1

II.    STATEMENT OF FACTS ............................................................. 1

III.   PROCEDURAL HISTORY ............................................................ 1

IV.    THE SETTLEMENT TERMS ....................................................... 3

       A. Proposed Settlement Class .................................................... 3

       B. The Settlement Fund ............................................................. 3

       C. Settlement Benefits .............................................................. 3

           1. Cash Payment A – Documented Losses ......................... 3

           2. Cash Payment B – Alternate Cash Payment ................... 4

           3. Credit Monitoring ......................................................... 4

           4. *Pro Rata* Adjustments on Cash Payments ..................... 4

       D. Class Notice ........................................................................ 4

       E. Claims Process ..................................................................... 5

       F. Settlement Administrator ..................................................... 6

       G. Opt-Out and Objection Procedures ...................................... 8

       H. Release of Claims ................................................................ 9

       I. Attorneys' Fees and Costs ................................................... 10

       J. Class Representative Service Awards ................................... 10

V.     LEGAL AUTHORITY ................................................................ 10

VI.    ARGUMENT .............................................................................. 11

       A. The Settlement Satisfies Rule 23(a). ................................... 12

           1. The Proposed Class is Sufficiently Numerous. ............ 12

           2. The Settlement Class Satisfies the Commonality Requirement ... 13

           3. Plaintiffs' Claims and Defenses are Typical of Those of the
              Settlement Class ........................................................... 13

           4. Plaintiffs Will Adequately Protect the Interests of the Settlement
              Class ............................................................................. 14

           5. The Settlement Class is Ascertainable ......................... 15

       B. The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement .. 15

       C. The Settlement Should Be Preliminarily Approved Pursuant to
          Rule 23(e). ......................................................................... 17

           1. The Strength of Plaintiffs' Case .................................... 19

           2. The Risk, Expense, Complexity, and Likely Duration of Further
              Litigation ...................................................................... 20

           3. The Risk of Maintaining Class Action Through Trial ... 21

           4. The Amount Offered in Settlement .............................. 21

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

5.  The Extent of Discovery Completed and the Stage of Proceedings .................................................................................. 22

6.  The Experience and Views of Counsel ........................................ 23

7.  Governmental Participants ............................................................ 23

8.  The Reaction of the Settlement Class Members to the Proposed Settlement ...................................................................... 23

9.  Lack of Collusion Among the Parties .......................................... 23

10. The Settlement Treats Settlement Class Members Equitably ....... 24

D.  The Court Should Approve the Proposed Notice Program ....................... 25

E.  Appointment of the Settlement Administrator ........................................... 25

F.  Appointment of Class Counsel .................................................................. 25

VII.    CONCLUSION .................................................................................................. 26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)....................................................................................... 11, 12, 15, 17

*Bloom v. City of San Diego*,
   No. 17-cv-02324, 2024 WL 1162103 (S.D. Cal. Mar. 18, 2024)...................................... 23, 24

*Butler v. Sears, Roebuck & Co.*,
   727 F. 3d 796 (7th Cir. 2013) ........................................................................................ 16

*Bykov v. DC Trans. Services, Inc.*,
   No. 2:18-cv-1692 DB, 2019 WL 1430984, (E.D. Cal. Mar. 29, 2019). .................................. 18

*Carter v. Vivendi Ticketing US LLC*,
   No. 2022-01981-CJC, 2023 WL 8153712, (C.D. Cal. Oct. 30, 2023) ................................... 20

*Chester v. TJX Cos.*,
   No. 5:15-cv-01437ODW(DTB), 2017 WL 6205788, (C.D. Cal. Dec. 5, 2017). .................... 20

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ........................................................................................ 11

*Cochran v. Accellion, Inc.*,
   No. 5:21-cv-01887-EJD (N.D. Cal.), ECF No. 32 ................................................................. 22

*Dennis v. Kellogg Co.*,
   No. 09-cv-1786-L(WMc), 2013 WL 6055326, (S.D. Cal. Nov. 14, 2013) ............................ 20

*Dickey's Barbeque Restaurants, Inc.*,
   No. 20-cv-3424 (N.D. Tex.)............................................................................................. 21

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ................................................................................... 12, 14

*Franklin v. Kaypro Corp.*,
   884 F.2d 1222 (9th Cir. 1989) ........................................................................................ 19

*Gaston v. FabFitFun, Inc.*,
   No. 2:20-cv-09534, 2021 WL 6496734  (C.D. Cal. Dec. 9, 2021)....................................... 20

*Gautreaux v. Pierce*,
   690 F.2d 616, (7th Cir. 1982) ........................................................................................ 18

*Gribble v. Cool Transports Inc.*,
   No. CV 06-4863 GAF (SHx), 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008)........................ 18

*Guy v. Convergent Outsourcing, Inc.*,
   No. C22-1558 MJP, 2023 WL 8778166 (W.D. Wash. Dec. 19, 2023) ............................ 13, 14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................... 14, 15, 16, 19

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

*Hillman v. Lexicon Consulting, Inc.*,
  No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869 (C.D. Cal. April 27, 2017)............... 23

*Holly v. Alta Newport Hosp., Inc.*,
  612 F. Supp. 3d 1017 (C.D. Cal. 2020) ................................................................. 12

*Hudson v. Libre Technology Inc.*,
  No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 (S.D. Cal. May 13, 2020) ...................... 24

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018)........................................................................ 16

*In re Anthem, Inc. Data Breach Litig.*,
  No. 5:15md-02617 (N.D. Cal. Aug. 15, 2018) ......................................................... 22

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ............................................................................ 19

*In re LinkedIn User Priv. Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015)................................................................... 16, 22

*In re Marriott Int'l Customer Data Sec. Breach Litig.*,
  No. 19-MD-2879, 2023 WL 8247865 (D. Md. Nov. 29, 2023). ................................... 21

*In re Marriott Int'l Customer Data Security Breach Litig.*,
  341 F.R.D. 128 (D. Md. 2022)........................................................................... 21

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................... 18, 24

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  MDL No. 14-2522, 2017 WL 2178306 (D. Minn. May 17, 2017)................................. 22

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
  No. 1:14-MD-02583-TWT, 2016 WL 6902351(N.D. Ga. Aug. 23, 2016) ........................ 13

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019)................................................. 16

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) ..................................................................... 14, 16

*Kastler v. Oh My Green*,
  No. 19-cv-02411, 2022 WL 1157492 (N.D. Cal. Apr. 19, 2022)................................... 23

*Keegan v. Am. Honda Motor Co.*,
  284 F.R.D. 504 (C.D. Cal. 2012) ........................................................................ 16

*Lilly v. Jamba Juice Co.*,
  308 F.R.D. 231 (N.D. Cal. 2014)........................................................................ 15

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) .......................................................................... 17

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

*Longest v. Green Tree Servicing LLC*,
    308 F.R.D. 310 (C.D. Cal. 2015). ........................................................... 14

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) ............................................................ 19

*Meyer v. Portfolio Recovery Associates*,
    707 F.3d 943 (9th Cir. 2012) ................................................................ 14

*Murillo v. Pacific Gas & Elec. Co.*,
    266 F.R.D. 468 (E.D. Cal. 2010) .......................................................... 18

*Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*,
    303 F.R.D. 337 (E.D. Cal. 2014) .......................................................... 18

*Orantes-Hernandez v. Smith*,
    541 F. Supp. 351(C.D. Cal. 1982). ....................................................... 12

*Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*,
    65 F. Supp. 3d 1046 (D. Or. 2014) ....................................................... 15

*Parsons v. Kimpton Hotel & Rest. Group, LLC*,
    No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019) ................................... 16

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985). .............................................................................. 25

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) .......................................................... 12

*Reyes v. Experian Info. Sols., Inc.*,
    No. SACV1600563AGAFMX, 2020 WL 466638 (C.D. Cal. Jan. 27, 2020) ...................... 17

*Smith v. Triad of Ala.*, LLC,
    No. 1:14-CV-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) ........................... 21

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442(2016) ................................................................................ 16

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011). ............................................................................. 13

*Williams v. Oberon Media, Inc.*,
    468 F. App'x 768 (9th Cir. 2012) .......................................................... 15

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) .............................................................. 17

**Other Authorities**

Joint Declaration of Plaintiffs' Counsel ............................................................ passim
*Manual for Complex Litigation (Fourth)* (2004) § 21.63. ............................... 11, 12
William B. Rubenstein, 1 Newberg on Class Actions § 3:3 (5th ed.) .................. 15
Wright, et al., Fed. Prac. and Proc. § 1777, p. 518–19 (2d ed. 1986) ............... 15

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

**Rules**

Fed. R. Civ. P. 23(a)(1)................................................................. 12
Fed. R. Civ. P. 23(a)(3)................................................................. 14
Fed. R. Civ. P. 23(a)(4)................................................................. 14
Fed. R. Civ. P. 23(b)(1)................................................................. 15
Fed. R. Civ. P. 23(c)(2)................................................................. 25
Fed. R. Civ. P. 23(e)(1)(B)............................................................ 25
Fed. R. Civ. P. 23(g)(1)(B)............................................................ 25
Fed. R. Civ. P. 23(e)................................................... 10, 17, 18, 19
Fed. R. Civ. P. 23................................................... 13, 14, 15, 25
Fed. R. Civ. P. 23(a)................................................... 12, 13, 15
Fed. R. Civ. P. 23(b)(3)................................................... 15, 16
Fed. R. Civ. P. 23(e)(1)................................................................ 17
Fed. R. Civ. P. 23(e)(2)................................................... 17, 18
Fed. R. Civ. P. 23(e)(2)(D)........................................................... 24
Fed. R. Civ. P. 23(g)(1)(A)........................................................... 26

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

## I.    INTRODUCTION

Plaintiffs[1] respectfully submit this Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support. Defendant has reviewed this filing and does not oppose this Motion. The Settlement is fair, reasonable and adequate, warranting preliminary approval and notice should be distributed to Settlement Class members.

## II.    STATEMENT OF FACTS

In September 2024, Backchecked became aware that an unauthorized actor gained access to its network, which resulted in the unauthorized acquisition of Plaintiffs' and Settlement Class members' Private Information. ECF No. 25, ¶ 1. On or about December 13, 2024, one of Defendant's customers and/or agents, Certified Employment Screening Inc. d/b/a Americhek ("Americhek") began notifying Plaintiffs and the Settlement Class about the Data Incident. *Id.* ¶ 3. The Data Incident involved Settlement Class members' Private Information, including names, addresses, dates of birth, driver's license number, and Social Security numbers. *Id*. ¶ 4.

## III.    PROCEDURAL HISTORY

On December 22, 2024, Plaintiff Raul Santos filed a class action complaint against Backchecked alleging various claims arising from the Data Incident. ECF No. 1. Following the filing of Plaintiff Santos' complaint, Plaintiffs Karlo Peralta and Raven Jackson filed a putative class action in the United States District Court for the Central District of California naming BackChecked and a separate entity as Defendants. After a discussion amongst counsel regarding jurisdictional issues, Plaintiffs Peralta and Jackon dismissed BackChecked from that litigation and filed a separate putative class action complaint against it in this district[2] which is materially and substantively identical to the complaint

---

[1] All capitalized terms herein shall have the same meanings as those defined in the Settlement Agreement, attached as ***Exhibit A***.

[2] *Peralta, et al. v. Backchecked, LLC*, No. 2:25 cv-00391-ESW (Feb. 5, 2025).

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

1

filed by Plaintiff Santos, as it has overlapping claims, seeks to represent the same putative class members, and arises out of the same Data Incident. On February 11, 2025, Plaintiffs filed a Motion to Consolidate the two actions. ECF No. 18. On April 14, 2025, the Court entered an order consolidating the two actions and set a deadline for Plaintiffs to file a consolidated complaint. ECF No. 23.

On May 30, 2025, Plaintiffs filed a Consolidated Class Action Complaint in this Action, alleging causes of action for: (i) negligence, (ii) negligence per se, (iii) breach of third-party beneficiary contract, (iv) breach of implied contract, (v) invasion of privacy, (vi) violation of the California Unfair Competition Law, Cal. Bus & Prof. Code 17200 *et seq.*, (vii) violation of the California Consumer Records Act, and (viii) declaratory judgment. ECF No. 25.

Thereafter, the Parties decided to explore early resolution of this matter and scheduled a mediation with experienced data breach mediator Steven R. Jaffe of UWWM for August 22, 2025. On June 6, 2025, to conserve resources in anticipation of the mediation, Defendant filed a motion to stay the Action pending the outcome of the mediation, which was granted. ECF Nos. 26, 27.

In advance of the mediation, Plaintiffs consulted with their damage and liability experts, propounded informal discovery requests on Defendant to which Defendant responded by providing information related to, among other things, the nature and cause of the Data Incident, the number and geographic location of victims impacted by the Data Incident, and the specific type of information breached.

The Parties attended mediation on August 22, 2025 with Mr. Jaffe. After extensive, arm's length negotiations under the guidance of the mediator, the Parties agreed to the terms of a settlement in principle. *See* Joint Declaration of Plaintiffs' Counsel ("Joint Decl."), attached hereto as ***Exhibit B***, ¶¶ 10-13. The Parties then spent time finalizing the full scope of the Settlement Agreement and executed the same on November 5, 2025. *Id.*

## IV.    THE SETTLEMENT TERMS

### A.  Proposed Settlement Class

The Settlement will provide relief for the following Settlement Class: "All living individuals residing in the United States whose Private Information may have been impacted in the Data Incident." Agreement ¶ 63. The number of Settlement Class members is approximately 26,524.

### B.  The Settlement Fund

Backchecked shall fund a non-reversionary Settlement Fund in the amount of $535,000.00. Agreement ¶ 66. The Settlement Fund shall be used to cover all Settlement Administration Costs, all valid Claims, Service Awards to the Class Representatives, and any attorneys' fees and expenses to Class Counsel and Plaintiffs' Counsel.

### C.  Settlement Benefits

The Settlement provides for the following benefits:

#### 1.  Cash Payment A – Documented Losses

Settlement Class members may submit a Claim for a Cash Payment for up to $2,500.00 per Settlement Class member upon presentment of documented losses reasonably traceable to the Data Incident. To receive a documented loss payment, a Settlement Class member must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documenting losses. Settlement Class members will be required to submit reasonable documentation supporting the losses. Such reasonable documentation includes, without limitation and by way of example, unreimbursed losses relating to fraud or identity theft; costs associated with freezing or unfreezing credit with any credit reporting agency; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges, if (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was more likely than not caused by the Data Incident; and (iii) the loss was incurred after the date of the Data Incident. Settlement Class members shall not be reimbursed for expenses if they have been

reimbursed for the same expenses by another source, including compensation provided in connection with the identity protection and credit monitoring services offered as part of the notification letter provided by Defendant or otherwise. If a Settlement Class member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class member fails to cure his or her Claim, the Claim will be rejected.

### 2. Cash Payment B – Alternate Cash Payment

As an alternative to Cash Payment A, a Settlement Class member may submit a Claim to receive Cash Payment B, which is a cash payment in an estimated amount of $50.00. As described herein, the amount will increase or decrease *pro rata* depending on the aggregate dollar amount of Valid Claims submitted.

### 3. Credit Monitoring

All Settlement Class members may make a Claim for one year of three-bureau Credit Monitoring, regardless of whether they have made a Claim for one of the Cash Payments described above.

### 4. *Pro Rata* Adjustments on Cash Payments.

Cash Payments will be subject to a *pro rata* increase in the event the aggregate dollar amount of Valid Claims is insufficient to exhaust the entire Settlement Fund. Similarly, in the event the aggregate dollar amount of Valid Claims exhausts the amount of the Settlement Fund, the amount of the Cash Payments will be reduced *pro rata*, accordingly. For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Settlement Fund first for payment of Credit Monitoring and then for Cash Payments. Any *pro rata* increases or decreases to Cash Payments will be on an equal percentage basis.

### D. Class Notice

The Parties have agreed on a comprehensive Notice Program, which includes Postcard Notice, Long Form Notice, and a Settlement Website. Agreement ¶¶ 45, 83-85.

Within 30 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program using the forms of Notice approved by the Court. *Id.* ¶ 83, § VIII. Settlement Class members for which a postal address is provided by Defendant shall receive a Postcard Notice by mail. *Id.*

Settlement Class members may request a Long Form Notice and review key documents and dates on the Settlement Website. The Notice, in forms similar to those attached to the Agreement as Exhibit 1 and 2, will inform the Settlement Class members of the general terms of the Settlement, including a description of the Action, the identity of the Settlement Class, and what claims will be released. It shall include, among other information: a description of the material terms; how to submit a Claim Form; the Claim Form Deadline; the Settlement Class member opt-out deadline; the deadline for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access the Agreement and other related documents and information. Additionally, opt-out procedures will be explained, as well as how Settlement Class Members may exercise their right to object to the proposed Settlement and/or Application for Attorneys' Fees, Costs and Service Awards at the Final Approval Hearing. Agreement ¶ 84.

### E.  Claims Process

To receive Settlement Class Member Benefits, Settlement Class members must accurately and timely submit a Claim by the Claim Form Deadline (15 days before the initial scheduled Final Approval Hearing). Agreement ¶ 24. Claim Forms, in a form similar to that attached to the Agreement as Exhibit 3, may be submitted online through the Settlement Website or through U.S. Mail sent to the Settlement Administrator at the address designated on the Claim Form. *Id*. ¶ 92. The Settlement Administrator will provide Settlement Class Members who submitted Valid Claims with their Settlement Class Member Benefits no later than 30 days after the Effective Date. *Id*. ¶101. Cash Payments

will be made electronically or by paper check, by sending Settlement Class Members with Valid Claims and an email to select from alternative forms of electronic payment or by paper check. *Id*. ¶ 102.

### F.  Settlement Administrator

Simpluris, Inc. ("Simpluris"), a well-respected and reputable third-party administrator that has significant experience with data breach settlement, shall act as the Settlement Administrator, subject to Court approval. Joint Decl. ¶ 14. The Settlement Administrator shall effectuate the Notice Program, handle the Claims Process, administer the Settlement Fund, and distribute the Settlement Class Member Benefits to Settlement Class Members. Agreement ¶ 80. The Settlement Administrator's duties include, *inter alia*:

a.     Serving CAFA Notice on the appropriate state and federal officials within 10 days following filing of the Motion for Preliminary Approval of the Settlement;

b.     Completing the Court-approved Notice Program by noticing the Settlement Class by Postcard Notice, sending out Long Form Notices and paper Claim Forms on request from Settlement Class members, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Deficiency, and sending Settlement Class Member Benefits to Settlement Class Members who submit Valid Claims;

c.     Establishing and maintaining the Settlement Fund in the Escrow Account approved by the Parties;

d.     Establishing and maintaining a post office box to receive opt-out requests from the Settlement Class, objections from Settlement Class Members, and Claim Forms;

e.     Establishing and maintaining the Settlement Website to provide important information and to receive electronic Claim Forms;

f.     Establishing and maintaining an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and answer the

frequently asked questions of Settlement Class members who call with or otherwise communicate such inquiries;

g.      Responding to any mailed Settlement Class member inquiries;

h.      Processing all opt-out requests from the Settlement Class;

i.      Providing weekly reports to Class Counsel and Defendant's Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notice of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information;

j.      In advance of the Final Approval Hearing, preparing a declaration for the Parties confirming that the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received and the amount of each benefit claimed, providing the names of each Settlement Class member who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

k.      Distributing, out of the Settlement Fund, Cash Payments by electronic means or by paper check;

l.      Sending Settlement Class Members who elect Credit Monitoring emails instructing how to activate their Credit Monitoring service.

m.      Paying Court-approved attorneys' fees, costs, and Service Awards out of the Settlement Fund;

n.      Paying Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel and Defendant's Counsel; and

o.      Any other settlement administration function at the instruction of Class Counsel and Defendant, including, but not limited to, verifying that the Settlement

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

7

Fund has been properly administered and that the Cash Payments and Credit Monitoring access information have been properly distributed.

### G. Opt-Out and Objection Procedures

Consistent with the Settlement's opt-out procedures, the Long Form Notice details that Settlement Class members who do not wish to participate in the Settlement may opt-out up to 15 days prior to the original Final Approval Hearing date. Agreement ¶ 48. During the Opt-Out Period, they may mail an opt-out request to the Settlement Administrator that includes the Settlement Class member's name, address, telephone number, and email address (if any), and a statement indicating a clear and explicit request to be excluded from the Settlement Class. Any Settlement Class member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement even if that Settlement Class Member does not submit a Claim Form. *Id.* ¶ 86.

The Agreement and Long Form Notice also specify how Settlement Class members may object to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards. Objections must be mailed to the Clerk of the Court, Class Counsel, Defendant's Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period (15 days before the original Final Approval Hearing date), as specified in the Notice. *Id.* ¶ 47. It must also set forth: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action

settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards, and whether the counsel intends to appear at the Final Approval Hearing; (e) the number of times in which the objector's counsel and/or the objector's counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling on the objection issued by the trial and appellate courts in each such listed case; (f) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (g) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (h) the objector's signature (an attorney's signature is not sufficient). *Id.* ¶ 88.

**H. Release of Claims**

Plaintiffs and Settlement Class Members who do not timely and validly opt-out of the Settlement Class will be bound by the terms of the Settlement, including the Releases that discharge the Released Claims against the Released Parties.

### I.   Attorneys' Fees and Costs

Under the Settlement Agreement, Plaintiffs will seek an award of attorneys' fees not to exceed one-third of the Settlement Fund, or $178,333.33, as well as a reimbursement of Class Counsel's reasonable out-of-pocket costs and litigation expenses actually incurred to be paid from the Settlement Fund. The attorneys' fees and costs will be formally sought in the Application for Attorneys' Fees, Costs, and Service Awards within the Motion for Final Approval no less than 45 days before the original date set for the Final Approval Hearing. Agreement ¶ 104. The Settlement is not contingent on approval of the requests for attorneys' fees and costs, and if the Court denies the requests or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 108. The Notice will advise the Settlement Class of the amounts of attorneys' fees that Class Counsel intends to seek.

### J.   Class Representative Service Awards

Subject to Court approval, the Plaintiffs will apply for the payment of a $2,500.00 Service Award to each of the Class Representatives for their service on behalf of the Settlement Class. Agreement ¶ 107. The Settlement is not contingent on approval of the requests for Service Awards, and if the Court denies the requests or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 108.

## V.   LEGAL AUTHORITY

Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which court approval is required to finalize a class action settlement. Courts, including those in this Circuit, endorse a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement followed by (2) dissemination of court-approved notice to the class and (3) a final fairness hearing at which class members may be heard regarding the settlement and at which evidence may be heard regarding the

1  fairness, adequacy, and reasonableness of the settlement. *Manual for Complex Litigation*
2  *(Fourth)* (2004) § 21.63.

3       Here, Plaintiffs request the Court take the first step, and grant preliminary approval
4  of the proposed Settlement Agreement.

5  **VI.    ARGUMENT**

6       Federal courts strongly favor and encourage settlements, particularly in class actions
7  and other complex matters where the inherent costs, delays, and risks of continued
8  litigation might otherwise overwhelm any potential benefit the class could hope to obtain.
9  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the
10 "strong judicial policy that favors settlements, particularly where complex class action
11 litigation is concerned"). More traditional means of handling claims like those at issue
12 here—individual litigation—would unduly tax the court system, require massive
13 expenditures of resources, and given the relatively small value of the claims of the
14 individual class members, would be impracticable. Thus, a settlement—and specifically
15 the Settlement Agreement proposed here—provides the best vehicle for Settlement Class
16 Members to receive the relief to which they are entitled in a prompt and efficient manner.

17      The Manual for Complex Litigation (Fourth) advises that in cases presented for both
18 preliminary approval and class certification, the "judge should make a preliminary
19 determination that the proposed class satisfies the criteria." § 21.632. Because a court
20 evaluating certification of a class action that settled is considering certification only in the
21 context of settlement, the court's evaluation is somewhat different than in a case that has
22 not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways,
23 the court's review of certification of a settlement-only class case, the case management
24 issues inherent in the ascertainable class determination need not be confronted. *See id.*
25 Other certification issues, however, such as "those designed to protect absentees by
26 blocking unwarranted or overbroad class definitions," require heightened scrutiny in the
27 settlement-only context "for a court asked to certify a settlement class will lack the

28

opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Plaintiffs here seek certification of Settlement Class consisting of:

> All living individuals residing in the United States whose Private Information may have been impacted in the Data Incident. Excluded from the Settlement Class are (a) all persons who are employees, directors, officers, and agents of Defendant; (b) governmental entities; and (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff.

Agreement ¶ 63.

For the reasons set forth below, the Court should certify the Settlement Class for settlement purposes and grant Preliminary Approval of the Settlement.

**A.  The Settlement Satisfies Rule 23(a).**

Before assessing the Parties' settlement, the Court should first confirm the underlying Settlement Class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; *Manual for Complex Litigation (Fourth)*, § 21.632. The requirements are well known: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011).

**1.  The Proposed Class is Sufficiently Numerous.**

While there is no fixed point where the numerosity requirement is met, Courts find numerosity where there are so many class members as to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Generally, Courts will find numerosity is satisfied where a class included at least 40 members. *Holly v. Alta Newport Hosp., Inc.*, 612 F. Supp. 3d 1017, 1027 (C.D. Cal. 2020) (citing *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)). Here, there are an estimated number

of 26,524 Settlement Class members. Accordingly, the proposed Settlement Class easily satisfies Rule 23's numerosity requirement.

### 2.   The Settlement Class Satisfies the Commonality Requirement.

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all center on [Defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). Thus, common questions include, *inter alia*, whether Backchecked engaged in the wrongful conduct alleged; whether Settlement Class members' Private Information was comprised in the Data Incident; whether Backchecked owed a duty to Plaintiffs and Settlement Class members; whether Backchecked breached its duties; whether Backchecked was unjustly enriched; and whether Backchecked violated the California Unfair Competition Law, Cal. Bus & Prof. Code 17200 *et seq.*, and the California Consumer Records Act as alleged in the Complaint. These questions are the same across the Settlement Class, as Backchecked's policies and procedures relating to data security remained consistent throughout the time period encompassing the Data Incident. *See Guy v. Convergent Outsourcing, Inc.*, No. C22-1558 MJP, 2023 WL 8778166, at *3 (W.D. Wash. Dec. 19, 2023) (allegations regarding defendant's "failure to safeguard their PII consistent with industry standards" satisfied commonality).

Thus, Plaintiffs have met the commonality requirement of Rule 23(a).

### 3.   Plaintiffs' Claims and Defenses are Typical of Those of the Settlement Class.

Plaintiffs satisfy the typicality requirement of Rule 23 because Plaintiffs' claims, which are based on Defendant's alleged failure to protect the Private Information of

Plaintiffs and all members of the Settlement Class, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v. Portfolio Recovery Associates*, 707 F.3d 943, 1041-42 (9th Cir. 2012) (upholding typicality finding). Plaintiffs allege their Private Information was compromised, and that they were therefore impacted by the same allegedly inadequate data security that they allege harmed the rest of the Settlement Class. *See Convergent Outsourcing*, 2023 WL 8778166, at *3 (finding allegations that personal information was compromised in data breach satisfied typicality requirement); *Just Film, Inc. v. Buono,* 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

### 4.    Plaintiffs Will Adequately Protect the Interests of the Settlement Class.

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 325 (C.D. Cal. 2015).

Here, Plaintiffs have no conflicts of interest with other Settlement Class members, are subject to no unique defenses, and they and their counsel have vigorously prosecuted this Action on behalf of the Settlement Class and will continue to do so. Plaintiffs are members of the Settlement Class who allegedly experienced the same injuries and seek, like other Settlement Class members, compensation for Backchecked's alleged data security shortcomings. As such, their interests and the interests of their counsel are consistent with those of other Settlement Class members. The group of Plaintiffs contains individuals whose Private Information was compromised in the Data Incident, ensuring that the interests of all Settlement Class members are adequately represented.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

1   Further, counsel for Plaintiffs have extensive combined experience as vigorous class

2   action litigators and are well suited to advocate for the Settlement Class. *See* Joint Decl., ¶

3   16. Thus, Plaintiffs satisfy the requirement of adequacy.

4         **5.   The Settlement Class is Ascertainable.**

5         Rule 23 also requires, at least implicitly, that the members of the proposed class be

6   objectively ascertainable. *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046,

7   1064 (D. Or. 2014). A proposed class must be "precise, objective, [and] presently

8   ascertainable." *See Williams v. Oberon Media, Inc.*, 468 F. App'x 768, 770 (9th Cir. 2012)

9   (quotation marks omitted) (alteration added). Class members must be identifiable through

10   "a manageable process that does not require much, if any, individual factual inquiry." *Lilly*

11   *v. Jamba Juice Co.*, 308 F.R.D. 231, 237 (N.D. Cal. 2014) (quoting William B. Rubenstein,

12   1 Newberg on Class Actions § 3:3 (5th ed.)). This requirement does not entail, however,

13   that "every potential member . . . be identified at the commencement of the action." *Id.*

14   (quotation marks omitted) (emphasis added). The purported Settlement Class members

15   have been identified through Backchecked's records.

16   **B.  The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement.**

17         "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking

18   class certification must also show that the action is maintainable under Fed. R. Civ. P.

19   23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, Plaintiffs allege that the Settlement

20   Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions

21   predominate over any questions affecting only individual members and class resolution is

22   superior to other available methods for a fair and efficient resolution of the controversy.

23   *Id*.

24         The predominance requirement "tests whether proposed classes are sufficiently

25   cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citing

26   Wright, et al., Fed. Prac. and Proc. § 1777, p. 518–19 (2d ed. 1986)). "If common questions

27   'present a significant aspect of the case and they can be resolved for all members of the

28        PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
                             ACTION SETTLEMENT

class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012) (*quoting Hanlon*, 150 F.3d at 1022). To satisfy this requirement, "common issues need only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck & Co.*, 727 F. 3d 796, 801 (7th Cir. 2013) (quotations omitted).

As discussed above, Plaintiffs allege that common questions predominate in this case over any questions affecting only individual members. Plaintiffs' claims depend, first and foremost, on whether Backchecked used reasonable data security measures to protect consumers' Private Information. Importantly, questions about Backchecked's data security procedures at the time of the Data Incident can be resolved, for purposes of settlement only, using the same evidence for all Settlement Class members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) [.]'") (citation omitted).

Additionally, for purposes of settlement, a class action is the superior method of adjudicating consumer claims arising from the Data Incident—just as in other data breach cases where class-wide settlements have been approved. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019); *Parsons v. Kimpton Hotel & Rest. Group*, *LLC*, No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316–17 (N.D. Cal. 2018); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015). Adjudicating individual actions here is impracticable: the amount in dispute for individual Settlement Class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See Just Film*, 847 F.3d at 1123.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

16

Also, because Plaintiffs seek to certify a class in the context of a settlement only, this Court need not consider any possible management-related problems as it otherwise would. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

In any event, no one member of the Settlement Class has an interest in controlling the prosecution of this action because Plaintiffs' claims and the claims of the Settlement Class members are the same. Alternatives to a class action are either no recourse for tens of thousands of individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice. Class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. Here, there are 26,524 Settlement Class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). A class action is therefore superior to other methods for the fair and efficient adjudication of the claims of Plaintiffs and the Settlement Class.

## C. The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e).

"[U]nder Rule 23(e)(1), the issue at preliminary approval turns on whether the Court 'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *Reyes v. Experian Info. Sols., Inc.*, No. SACV1600563AGAFMX, 2020 WL 466638, at *1 (C.D. Cal. Jan. 27, 2020). Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or

compromised only with the court's approval."  Moreover, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class."  If the parties make a sufficient showing that the Court will likely be able to "approve the proposal" and "certify the class for purposes of judgment on the proposal," "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). Thus, notice should be given to the class, and hence preliminary approval should be granted, where the Court "will likely be able to" finally approve the settlement under Rule 23(e)(2) and certify the class for settlement purposes. *Id.*

"In evaluating a proposed settlement at the preliminary approval stage, some district courts . . . have stated that the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.'" *Bykov v. DC Trans. Services, Inc.*, No. 2:18-cv-1692 DB, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019). That is, "preliminary approval of a settlement has both a procedural and a substantive component." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

As to the procedural component, "a presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of collusion between the negotiating parties." *Gribble v. Cool Transports Inc.*, No. CV 06-4863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008). Likewise, "participation in mediation tends to support the conclusion that the settlement process was not collusive." *Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*, 303 F.R.D. 337, 350 (E.D. Cal. 2014). With respect to the substantive component, "[a]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010) (*quoting Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

In sum, "the purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to

1  proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo.
2  2006). To that end, the Ninth Circuit has identified nine factors to consider in analyzing
3  the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the
4  plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation;
5  (3) the risk of maintaining class action status throughout the trial; (4) the amount offered
6  in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6)
7  the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the
8  class members to the proposed settlement; and, (9) whether the settlement is a product of
9  collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946
10 (9th Cir. 2011); *see also Hanlon*, 150 F.3d at 1026. Rule 23(e) requires a court to consider
11 several additional factors, including that the class representative and class counsel have
12 adequately represented the class, and that the settlement treats class members equitably
13 relative to one another. Fed. R. Civ. P. 23(e).

14      In applying these factors, this Court should be guided foremost by the general
15 principle that settlements of class actions are favored by federal courts. *See Franklin v.*
16 *Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point
17 out that there is an overriding public interest in settling and quieting litigation. This is
18 particularly true in class action suits."). Here, the relevant factors support the conclusion
19 that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should
20 be preliminarily approved.

21          **1.    The Strength of Plaintiffs' Case**

22      Plaintiffs believe they have built a strong case for liability. Plaintiffs believe their
23 claims are viable and that they have a good chance of proving that Backchecked's data
24 security was inadequate and that, if they establish that central fact, Defendant is likely to
25 be found liable for violations of the claims which Plaintiffs pled in their Consolidated
26 Complaint. While Plaintiffs believe they have strong claims and would be able to prevail,
27 their success is not guaranteed.

28      PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
            ACTION SETTLEMENT

                                    19

It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, No. 5:15-cv-01437ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the heavy obstacles and inherent risks Plaintiffs face with respect to the novel claims in data breach class actions, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favors preliminary approval of the Settlement. Joint Decl., ¶¶ 16-18.

## 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs are confident in their remaining claim, all cases, including this one, are subject to substantial risk. This case involves a proposed class of approximately 26,524 Settlement Class members whose Private Information was involved in the Data Incident, each of whom would need to establish cognizable harm and causation, and a complicated and technical factual background.

Although nearly all class actions involve a high level of risk, expense, and complexity—"[t]hese general risks are heightened in data breach cases like this one." *Carter v. Vivendi Ticketing US LLC*, No. 2022-01981-CJC, 2023 WL 8153712, at *6 (C.D. Cal. Oct. 30, 2023); *see also Gaston v. FabFitFun, Inc.*, No. 2:20-cv-09534, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."). This case is no different in that it would present risk at class certification with no guarantee that the Court would certify Plaintiffs' proposed Class. Accordingly, this factor favors approval.

### 3.    The Risk of Maintaining Class Action Through Trial

As noted above, Plaintiffs would encounter risks in obtaining and maintaining class certification. Class certification in contested consumer data breach cases is not common—first occurring in *Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *15-16 (M.D. Ala. Mar. 17, 2017). In a recent data breach case where classes were contested but ultimately certified, *In re Marriott Int'l Customer Data Security Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022), the classes were decertified on appeal. *See In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023).[3] The relative absence of trial class certification precedent in the relatively novel data breach setting adds to the risks posed by continued litigation.

### 4.    The Amount Offered in Settlement

The Settlement makes significant relief available to Settlement Class members in the form of Cash Payments and Credit Monitoring. The amount of compensation per Settlement Class member is substantial. Each Settlement Class member will be entitled to choose between Cash Payment A for documented losses or Cash Payment B for an alternate cash payment, in addition to a year of Credit Monitoring. If they elect Cash Payment B, the amount Settlement Class Members receive will be calculated *pro rata* according to the Settlement Agreement, but is estimated by the Parties, based on their significant experience with settlements of this nature, that it will be approximately $50.00 per Settlement Class Member. Agreement ¶ 21. This Settlement is a solid result for the Settlement Class with its value per Settlement Class member on par with or exceeding that in other data breach settlements.[4] Because the Settlement amount here is similar to other settlements reached

---

[3] The classes were then re-certified by the district court on remand. *See In re Marriott Int'l Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2023 WL 8247865, at *1 (D. Md. Nov. 29, 2023).

[4] *See, e.g. Dickey's Barbeque Restaurants, Inc.*, No. 20-cv-3424 (N.D. Tex.), ECF No. 62 (data breach class action involving more than 3 million people that settled for $2.3 million,

and approved in similar cases, this factor reflects that the Settlement is fair. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7–8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). Accordingly, this factor favors approval.

### 5.    The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Here, Plaintiffs gathered all the information that was available regarding Backchecked and the Data Incident, including publicly-available documents regarding the Data Incident. The Parties also informally exchanged non-public information concerning the Data Incident and the Settlement Class size in preparation for mediation. *Id.* During the settlement negotiations, the Parties exchanged informal discovery to the point where "the parties have sufficient information to make an informed decision about settlement," including the strengths and weakness of their respective cases. *See Linney*, 151 F.3d at 1239.

Class Counsel's extensive experience with representing plaintiffs in data privacy class actions assisted Plaintiffs in efficiently litigating this matter on behalf of the Settlement Class. Joint Decl., ¶ 16. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8

---

or $0.76 per person); *Cochran v. Accellion, Inc.*, No. 5:21-cv-01887-EJD (N.D. Cal.), ECF No. 32 (June 30, 2021) ($5 million settlement fund for 3.82 million class members or approximately $1.31 per class member); *In re Anthem, Inc. Data Breach Litig.*, No. 5:15md-02617 (N.D. Cal. Aug. 15, 2018) ($115 million settlement in medical information data breach for 79,200,000 class members; $1.45 per class member); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, 2017 WL 2178306, at *1- 2 (D. Minn. May 17, 2017) ($10 million settlement for nearly 100 million class members; 10 cents per class member); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) ($1.25 million settlement for approximately 6.4 million class members; 20 cents per class member).

(C.D. Cal. April 27, 2017). Accordingly, Plaintiffs are well-informed about the strengths and weaknesses of this case.

### 6. The Experience and Views of Counsel

Class Counsel initiated this lawsuit when Backchecked announced the Data Incident, which, based upon publicly available information, potentially impacted approximately 26,524 customers. Having worked on behalf of the putative class since the Data Incident were first announced, evaluated the legal and factual issues presented in this case, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully endorses the Settlement. Courts "afford great weight to the recommendation of counsel with respect to the settlement because counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Bloom v. City of San Diego*, No. 17-cv-02324, 2024 WL 1162103, at *4 (S.D. Cal. Mar. 18, 2024) (Internal citation omitted); *Kastler v. Oh My Green*, No. 19-cv-02411, 2022 WL 1157492, at *4 (N.D. Cal. Apr. 19, 2022) ("Courts may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement considering Plaintiff's likelihood of recovery.") (internal citation and quotation omitted). Accordingly, this factor supports approval.

### 7. Governmental Participants

There is no governmental participant in this matter. This factor is neutral.

### 8. The Reaction of the Settlement Class Members to the Proposed Settlement

The Class Representatives fully support this Settlement, yet this factor is neutral given that notice has not yet been issued to the Settlement Class informing Class Members about the Settlement.

### 9. Lack of Collusion Among the Parties

The Parties negotiated a substantial Settlement Fund. Class Counsel and Defendant's counsel are experienced in handling data breach class actions such as this one

and fully understand the values recovered in similar cases. Joint Decl., ¶¶ 15-19. The terms of the Settlement were negotiated at arm's length and included a full-day mediation under the guidance of the mediator Steven R. Jaffe of UWWM, who has considerable experience in mediating data breach class actions, and who is considered one of the top mediators in the country for data breach cases. Joint Decl., ¶ 10. The negotiations were vigorously contested, were overseen by Mr. Jaffe, and were non-collusive. *Bloom*, 2024 WL 1162103, at *4 (noting "that "the settlement was reached with the assistance of an experienced mediatory further suggests that the settlement if fair and reasonable.").

### 10. The Settlement Treats Settlement Class Members Equitably

Finally, Rule 23(e)(2)(D) requires that the settlement treats all class members as equitably as possible under the circumstances. In determining whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Technology Inc.*, No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, *9 (S.D. Cal. May 13, 2020) (*quoting In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). Here, the Settlement treats all Settlement Class members equitably, taking into account the difference between Settlement Class members who may have potentially suffered documented losses through the Data Incident, and those who have suffered undocumented losses through the compromise of their Private Information in the Data Incident. Each and every Settlement Class member has the opportunity to make a claim for a *pro rata* Cash Payment through Cash Payment Option B, estimated to be $50.00. While Plaintiffs have been permitted to seek approval of Service Awards from this Court, as will be explained in detail in Plaintiffs' Application for Attorneys' Fees, Costs, and Service Awards, the contemplated Service Awards of $2,500.00 per Class Representative are in line with awards granted in similar cases, is presumptively reasonable, and do not call into question Plaintiffs' adequacy or the validity of the Settlement. Accordingly, this factor also weighs in favor of approval.

**D. The Court Should Approve the Proposed Notice Program**

Rule 23 requires that before final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "The notice may be by one or more of the following:  United States mail, electronic means, or other appropriate means." *Id.*

Notice to class members must apprise interested parties of the pendency of the action and afford them an opportunity to potentially object to the settlement. Fed. R. Civ. P. 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Here, and after a competitive bidding process, the Parties agreed to a robust notice program to be administered by Simpluris, an experienced third-party settlement administrator, which will use all reasonable efforts to provide direct notice to each potential Settlement Class member via Postcard Notice through direct U.S. mail. Notice and Settlement Administration Costs will be paid from the Settlement Fund. Agreement ¶ 69. The Settlement Administrator will also establish a dedicated Settlement Website that will contain the Postcard Notice, Long Notice, Claim Form, and other related documents. *Id.* ¶ 85.

Accordingly, the Notice plan should be approved.

**E. Appointment of the Settlement Administrator**

The Parties request that the Court appoint Simpluris to serve as the Settlement Administrator. Simpluris has a trusted and proven track record of supporting hundreds of class action administrations, with legal administration experience. Joint Decl., ¶ 14.

**F. Appointment of Class Counsel**

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the

case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Here, proposed Class Counsel has extensive experience prosecuting class actions and data privacy class action cases. *See* Joint Decl., ¶ 16. Accordingly, the Court should appoint Andrew J. Shamis of Shamis & Gentile, P.A and Jeff Ostrow of Kopelowitz Ostrow P.A., as Class Counsel.

## VII. CONCLUSION

The $535,000.00 Settlement Fund for 26,524 Class Members is a substantial recovery for the Settlement Class. Accordingly, Plaintiffs respectfully request that this Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement because the Settlement is fair, reasonable, and adequate. A copy of the Proposed Order Granting Preliminary Approval of Class Action Settlement is also submitted herewith for the Court's consideration.

Dated: November 10, 2025         Respectfully submitted,

         /s/Andrew J. Shamis
         Andrew J. Shamis
         **SHAMIS & GENTILE P.A.**
         14 NE 1st Avenue, Suite 705
         Miami, Florida 33132
         ashamis@shamisgentile.com

         Jeff Ostrow
         **KOPELOWITZ OSTROW P.A.**
         1 W. Las Olas Blvd., Ste. 500
         Fort Lauderdale, FL 33301
         Telephone: (954) 525-4100
         ostrow@kolawyers.com

         *Counsel for Plaintiffs and the Proposed Class*

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT